UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALAN W. PEASE,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>MICHAEL J. ASTRUE,<br>Commissioner of Social Security,<br><br>　　　　Defendant. | NO. SACV 07-00425 AGR<br><br><br>MEMORANDUM OPINION AND ORDER |

　　　　Alan W. Pease filed this action on April 17, 2007.  Pursuant to 28 U.S.C. § 636(c), the parties filed Consents to proceed before Magistrate Judge Rosenberg on April 24 and May 21, 2007.  On December 10, 2007, the parties filed a Joint Stipulation ("JS") that addressed the disputed issues.  The Court has taken the matter under submission without oral argument.

　　　　Having reviewed the entire file, the Court reverses the Commissioner's decision and remands for further proceedings consistent with this Opinion.

///

///

///

///

# I.

# PROCEDURAL BACKGROUND

On August 26, 2003, Pease filed applications for disability insurance benefits and supplemental security income benefits. A.R. 73-75. The applications were denied initially and on reconsideration. A.R. 47-65. Pease requested a hearing. A.R. 66. The Administrative Law Judge ("ALJ") conducted hearings on January 18, 2006, and September 11, 2006. A.R. 303-337. On October 19, 2006, the ALJ issued a decision denying benefits. A.R. 9-21. On November 28, 2006, Pease filed a request for review of the ALJ's decision. A.R. 7. On March 12, 2007, the Appeals Council denied the request for review. A.R. 4-6. This lawsuit followed.

# II.

# STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to deny benefits. The decision will be disturbed only if it is not supported by substantial evidence, or it is based upon the application of improper legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966 F.2d 1255, 1257 (9th Cir. 1992).

"Substantial evidence" means "more than a mere scintilla but less than a preponderance – it is such relevant evidence that a reasonable mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523. In determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257. When the evidence is susceptible to more than one rational interpretation, the Court must defer to the Commissioner's decision. *Moncada*, 60 F.3d at 523.

///

///

# III.
# DISCUSSION

"A person qualifies as disabled, and thereby eligible for such benefits, 'only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.'" *Barnhart v. Thomas*, 540 U.S. 20, 21-22, 124 S. Ct. 376, 157 L. Ed. 2d 333 (2003) (citation omitted).

### A.     The ALJ's Findings

The ALJ found that Pease had the following severe impairments: "history of herniated nucleus pulposus at C6-7 with spinal cord compression, status post cervical discectomy and fusion at C5-6, lumbar disc degeneration and disc space narrowing, status post lumbar laminectomy and fusion at L4-5, and bilateral vestibulopathy." A.R. 20.  The ALJ found that Pease has the residual functional capacity to perform "a significant range of light work."  A.R. 21. He found that Pease had the following residual functional capacity: "lifting and/or carrying 10 pounds frequently and 20 pounds occasionally; sitting for 6 hours total in an 8-hour workday with normal breaks; standing and/or walking for 4 hours total in an 8-hour workday with normal breaks; occasional bending, stooping, crouching, crawling and reaching overhead; and total restriction from climbing, balancing, and working around unprotected heights, dangerous machinery, fast moving machinery, and vibrating tools." A.R. 20.

The ALJ found that Pease could not perform any of his past relevant work. *Id.* However, Pease could perform work as a cashier II (DOT 211.462-010), office clerk (DOT 239.564-010) and various assembler jobs.  A.R. 21.

### B.     Plaintiff's Right to Counsel and Development of the Record

A social security [recipient] has a statutory right, which may be waived, to be represented by counsel at a hearing before an ALJ." *Graham v. Apfel*, 129

F.3d 1420, 1422 (11th Cir. 1997) (per curiam); *Binion v. Shalala*, 13 F.3d 243, 245 (7th Cir. 1994); 24 U.S.C. § 406.

However, "absence of counsel alone [is] not sufficient grounds for remand." *Hall v. Sec'y of Health, Education and Welfare*, 602 F.2d 1372, 1378 (9th Cir. 1979) (citation omitted). "The claimant must demonstrate prejudice or unfairness in the administrative proceedings to be entitled to relief by way of remand." *Id.* (citations omitted). "[T]he issue is not whether the right to representation was knowingly waived, rather, it is whether, in the absence of representation, the administrative law judge met the heavy burden imposed by *Cox*." *Vidal v. Harris*, 637 F.2d 710, 714 (9th Cir. 1981). In *Cox*, the court held that when the claimant is unrepresented, the ALJ must "scrupulously and conscientiously probe into, inquire of, and explore all relevant facts," and he must be "especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." *Cox v. Califano*, 587 F.2d 988, 991 (9th Cir. 1978) (citations and internal quotation marks omitted).

Pease concedes that he waived his right to counsel. JS 4; A.R. 305-308, 320-321. However, Pease contends that he was prejudiced by lack of representation because the ALJ failed to properly develop the record. Specifically, Pease argues that the ALJ (1) failed to obtain medical records after August 2003; (2) failed to inquire why Pease stopped receiving treatment; and (3) ignored the medical expert's testimony that Pease's heart rate required a cardiology workup.

***Medical Records.*** The record does not indicate that there are any medical records after August 2003. At the January 18, 2006 hearing, Pease confirmed that he reviewed the file. A.R. 309. The ALJ specifically asked Pease whether there are any documents not in the file that Pease felt the ALJ should have in order to make an informed decision. Pease responded, "No, sir." *Id.* Pease further testified that he is not being treated by a doctor. A.R. 310. At the

4

September 11, 2006 hearing, Pease again testified that he had the opportunity to review his file. A.R. 321. Pease testified that he was not being treated by a doctor. A.R. 324. At no time did Pease indicate there are any missing medical records.[1]

***Inquiry as to Why Pease Stopped Receiving Treatment.*** The record demonstrates that the ALJ inquired as to Pease's reasons for not seeking treatment. At the January 18, 2006 hearing, the ALJ asked whether Pease had a treating physician. Pease responded that he did not have medical insurance and had no way of getting any medical treatment. A.R. 314. The ALJ again inquired, "And you have no way to see any type of doctor at all?" A.R. 316. Pease responded, "No, sir, no." *Id.* At the September 11, 2006 hearing, the ALJ asked Pease why he was not being treated by a doctor. A.R. 324. Pease responded that he had been to a lot of doctors when he first started having problems and has tried every avenue he could think of. *Id.* Pease does not provide any indication that the record is incomplete in any way.

***Medical Expert's Testimony***. At the January 18, 2006 hearing, the medical expert, Dr. Mason, testified based on a review of the medical records. Dr. Mason testified that Pease "has not had an appropriate evaluation by a specialist that would be indicated based upon his symptoms." A.R. 311. Dr. Mason noted two occasions in the medical records on which Pease's heart rate was 51 and 45, respectively. A.R. 312. A heart is considered normal if it is between 60 and 100 beats per minute. A.R. 313. Dr. Mason considered that Pease had "a serious bradycardia or cardiac arrhythmia" which could be a cause

---

[1] Pease cites his testimony that his last trip to an emergency room for a blackout took place "like three, a couple years ago." A.R. 324. Three years prior to the hearing would be 2003, whereas two years would mean 2004. Given that Pease was unsure as to the year, this equivocal testimony does not constitute evidence that additional medical records exist. Moreover, Pease bears the burden of furnishing medical and other evidence of disability. 42 U.S.C. § 423(d)(5). Pease offers no explanation as to why he has never sought to admit any additional records to the ALJ, the Appeals Council or this Court.

of the dizziness Pease experienced.  A.R. 312-313.  The ALJ clarified: "So you're suggesting that he needs further workup."  A.R. 313.  Dr. Mason responded: "He needs a cardiac work-up.  That's all.  And I don't think we should proceed until we have that done."  *Id.*  The ALJ stated that he would send Pease out for further evaluation at government expense.  A.R. 314.

Pease argues that the ALJ ignored Dr. Mason's testimony that he be sent to a specialist for a cardiac workup (JS 10), and instead sent him to an internist who did not give him a cardiac workup.  A.R. 294-298.  The ALJ noted that, according to the internist, Pease had a pulse of 68 and a regular heart rhythm.  A.R. 16, 296.  However, there is nothing in the record to indicate that Pease was given a cardiac workup or that the internist was even aware of a potential cardiac problem.  *See* A.R. 294-296.

An ALJ must develop the record when the evidence is ambiguous or "the record is inadequate to allow for proper evaluation of the evidence."  *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  Here, Dr. Mason testified that Pease "has not had an appropriate evaluation by a specialist that would be indicated based upon his symptoms."  A.R. 311.  Furthermore, Dr. Mason testified that he did not think that the ALJ should proceed further until the cardiac work-up was done.  A.R. 313.  Because the record does not establish that the ALJ sent Pease to a specialist or that Pease received a cardiac work-up, the ALJ did not fully and fairly develop the record.  *See Tonapetyan*, 242 F.3d at 1150 (physician found it "difficult to say" whether medical record was complete enough and stated he would "have to see more evidence" before rendering an opinion) (internal quotation marks omitted).

On remand, the ALJ should develop the record and send Pease to a cardiologist for a cardiac workup.  The ALJ should then conduct further proceedings, as necessary, for a Step Five determination.

///

### C. **Pease's Credibility**

Given that this matter is being remanded to the Commissioner for further proceedings, the Court does not reach the issue of Pease's credibility, which must be assessed in light of the entire record. On remand, the ALJ may revisit the issue of Pease's credibility in light of any additional evidence in the record.

## IV.
## ORDER

IT IS HEREBY ORDERED that the decision of the Commissioner is reversed and remanded for further proceedings consistent with this Opinion.

IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

DATED: April 17, 2008

_____
ALICIA G. ROSENBERG
United States Magistrate Judge